The Honorable Theresa L Fricke

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| JULIE ARCAND,<br>for herself, as a private attorney general, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CATALYST BRANDS LLC,<br>and PENNEY OPCO LLC,<br><br>Defendants. | Case No. 2:25-cv-01445-TLF<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Julie Arcand, demanding trial by jury as to all issues so triable in a separate document to be filed, alleges as follows, on personal knowledge and investigation of her counsel, against Defendants Catalyst Brands LLC and Penney OpCo LLC (collectively, "JCPenney"):

## INTRODUCTION AND SUMMARY

1. This is a class action against JCPenney for false or misleading email marketing in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, and the Washington Commercial Electronic Mail Act, ("CEMA"), RCW 19.190.

2. JCPenney operates JCPenney retail stores and its website jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout Washington and the United States. JCPenney predominately sells private and exclusive products of in-house brands that are only available from JCPenney (e.g., Liz Claiborne, St. John's Bay, Arizona, a.n.a.). JCPenney also sells some products from national brands.

3. For years, JCPenney has engaged in a massive false discount advertising scheme across more than 90% of its products on the JCPenney website and in its retail stores. JCPenney advertises perpetual or near-perpetual discounts—typically 25% to 70% off—from a false higher list price which is printed on its product tags and displayed on its website. JCPenney's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from JCPenney's own regular offering prices for those products. However, JCPenney's advertised discounts are false because JCPenney never or almost never offers or sells its products at their list price.

4. JCPenney also falsely advertises "free" offers such as "Buy 1 Get 1 Free," "Buy 1 Get 2 Free," or "BOGO Free" where JCPenney represents that it will include one or two more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. JCPenney's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, because



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the item is "discounted" by up to 70% off the list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

5. JCPenney also falsely advertises that the discounts are for a limited time, when in fact the advertised savings are perpetual and never-ending.

6. JCPenney's false discount advertising is so pervasive across all of its products in all of its retail and marketing channels that it is apparent that the heart of JCPenney's marketing plan is to deceive the public.

7. An important part of JCPenney's false discount advertising scheme is to send a constant stream of marketing emails to consumers that prominently advertise these false discounts in the subject line. Many of the consumers who receive these emails with deceptive email subject lines include Washington residents.

8. For example, JCPenney sends emails with subject lines that advertise false discounts at a specified purported percentage off (e.g., **"Shop now! 30% Off Liz Claiborne & St. John's Bay"**). The stated discounts in the subject lines are materially false or misleading because, in reality, the discounts are being calculated from inflated and fictitious list prices at which JCPenney has never or almost never offered the products for sale.

9. JCPenney also sends emails with subject lines that advertise false "free" offers (e.g., **"*BOGO Free!* Arizona jeans & pants"**). The subject lines are materially false or misleading because, in reality, the "free" items are not actually free; JCPenney directly recovers all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item to the inflated—and otherwise never charged—list price.

10. The subject lines of the emails are also materially false or misleading because they advertise the purported savings are for a limited time and indicate that the products will return to the full price after the sale ends (e.g. **"Last chance❗Buy 1 Get 2 FREE towels"**), when in fact the advertised savings are perpetual and never-ending.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

11. The Washington Supreme Court recently held that CEMA "prohibits sending Washington residents commercial e-mails that contain ***any*** false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales events, or discounts. **"CEMA protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id*. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at *2.

12. Ms. Arcand brings this lawsuit individually and on behalf of a class of consumers residing in Washington who also received emails from JCPenney which contained false or misleading discount advertising in the subject line. Ms. Arcand's requested relief includes an injunction to end the unlawful practices alleged herein. Ms. Arcand also requests an award to herself and to each class member of $500 in statutory damages for each and every violative email received, and an award of attorneys' fees and costs.

## THE PARTIES

13. Plaintiff Julie Arcand is a citizen of the United States of America and an individual and a natural adult person who currently resides and who, at all relevant times in the past resided in, North Bend, King County, Washington. Ms. Arcand is an unsophisticated consumer party.

14. Defendant Catalyst Brands LLC is a limited liability company that was formed in January 2025 following a merger between SPARC Group LLC and Penney OpCo LLC. Catalyst Brands LLC is headquartered in Plano, Texas, at the former and current Penney OpCo LLC corporate headquarters. Catalyst Brands LLC also has an office in Seattle, Washington.[1]

15. Defendant Penney OpCo LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and with its principal place of business in Plano, Texas.

---

[1] *See* https://corporate.jcpenney.com/2025/01/08/sparc-group-has-merged-with-jcpenney-to-form-catalyst-brands/ (Penney OpCo LLC press release announcing the merger and stating where Catalyst Brands LLC's headquarters and other offices are located). This press release is also attached as **Exhibit A.**



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

16. From December 7, 2020, until at least the January 2025 merger, Penney OpCo LLC owned and managed the retail, website, and marketing operations of the JCPenney brand and conducted the unlawful actions described herein—including the creation and sending of the violative emails. Catalyst Brands LLC is the stated successor to Penney OpCo LLC, and as such Catalyst Brands LLC is also liable for all unlawful actions pled herein that were conducted by Penney OpCo LLC from December 7, 2020, until at least the January 2025 merger. *See* Penney OpCo LLC press release referenced at footnote 1 (the press release is also attached as **Exhibit A**). To the extent that Penny OpCo LLC has not been fully merged into Catalyst Brands LLC as the press release indicates, Penny OpCo LLC continues to be liable for said unlawful actions.

17. Since the January 2025 merger, Catalyst Brands LLC has been directly responsible for the retail, website, and email marketing operations of the JCPenney brand and has conducted the unlawful actions described herein. To the extent that Penny OpCo LLC has not been fully merged into Catalyst Brands LLC as the press release indicates, Penny OpCo LLC continues to also be liable for said unlawful actions since the January 2025 merger. Catalyst Brands LLC and/or Penney OpCo LLC continue to own and operate the approximately 659 brick-and-mortar JCPenney retail stores throughout the United States, including 15 in Washington, along with the JCPenney retail website.

18. Notably, since the January 2025 merger, Catalyst Brands LLC and Penney OpCo LLC have been headquartered together at the long-standing corporate headquarters of Penny OpCo LLC in Plano, Texas. Furthermore, according to the Penney OpCo LLC press release referenced at footnote 1 (and at **Exhibit A**), the former CEO of Penney OpCo LLC, Marc Rosen, is now the CEO of Catalyst Brands LLC, and the brand manager for JCPenney reports directly to Mr. Rosen at Catalyst Brands LLC.

19. In this Complaint, Catalyst Brands LLC and Penney OpCo LLC are collectively referred to as "JCPenney" or "Defendants."[2]

---

[2] In the event that discovery reveals that the JCPenney brand and assets have a different ownership or management structure, Plaintiff will seek leave to file an amended pleading that



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## JURISDICTION AND VENUE

20. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from each Defendant.

21. **Personal Jurisdiction.** This Court has personal jurisdiction over each Defendant because, without limitation: (1) each Defendant is authorized to do business and regularly conducts business in Washington; (2) the claims alleged herein took place in Washington; and/or (3) each Defendant has committed tortious acts within Washington (as alleged, without limitation, throughout this Complaint). Each Defendant has sufficient minimum contacts with Washington to render the exercise of jurisdiction by this Court permissible.

22. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff is a Washington citizen who resides in this District; each Defendant resides in this district within the meaning of 28 U.S.C. §1391(b)(1) and (c)(2); and/or a substantial part of the events or omissions giving rise to the claim occurred in this District.

23. **Intradistrict Assignment.** The Seattle Division is the proper division under LCR 3(e). Plaintiff resides in King County, which is part of the Seattle Division. Also, a substantial part of the events or omissions giving rise to the claim occurred in the Seattle Division.

## FACTUAL ALLEGATIONS

24. JCPenney operates JCPenney retail stores and the JCPenney website, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout Washington and the United States.

25. JCPenney currently operates approximately 659 retail stores throughout the United States, with at least 15 locations in Washington State. The JCPenney website is

---

conforms to proof.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

accessible from Washington State, and consumers in Washington State view the contents of the JCPenney website and purchase goods from JCPenney's website. JCPenney sends marketing emails to consumers throughout the country, including thousands of consumers in Washington State.

26. JCPenney predominately sells exclusive products of in-house brands that are only available from JCPenney (e.g., Liz Claiborne, St. John's Bay, Arizona, a.n.a.). JCPenney also sells some products from national brands.

### A. Background Information: JCPenney's Advertised Discounts And "Free" Offers Are False.

27. For years, JCPenney has engaged in a massive false discount advertising scheme across over 90% of its products on the JCPenney website and in its retail stores. JCPenney advertises perpetual or near-perpetual discounts—typically 25% to 70% off—from a false higher list price which is printed on its product tags and displayed on its website. JCPenney's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from JCPenney's own regular offering prices for those products. However, JCPenney's advertised discounts are false because JCPenney never or almost never offers or sells its products at their list price.

28. JCPenney also advertises "free" offers such as "Buy 1 Get 1 Free," "Buy 1 Get 2 Free," or "BOGO Free" where JCPenney represents that it will include one or two more of a given item (or of a specified similar item) for "free" if the consumer pays the list price for the item. JCPenney's advertised "free" offers are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, because the item is "discounted" by up to 70% off the list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

29. JCPenney also falsely advertises that the purported savings are for a limited time and indicates that the products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

30. Plaintiff's allegations concerning JCPenney's false discount advertising are based on a comprehensive investigation by Plaintiff's counsel of JCPenney's pricing practices for a period of over 10 years, including the period December 2020 to the present (which is the period JCPenney conducted the unlawful actions described herein when owned and managed by Defendants).

31. Plaintiff's counsel has been monitoring and scraping the JCPenney website on an automated daily basis with a proprietary software program since March 7, 2014. Plaintiff's counsel has compiled and extracted daily pricing and marketing data from the website for nearly all of the products JCPenney has offered during this time. In total, Plaintiff's counsel has assembled and analyzed an exhaustive historical database of daily prices and time-stamped screenshots of over 245 million daily product offerings for over 900,000 products over this period.

32. Plaintiff's counsel's investigation and data shows that JCPenney advertises perpetual discounts for more than 90% of its products, typically ranging from 25% to 70% off.

33. The percentage-off and other discounts are ***always*** false, and JCPenney's list prices to which the discounts are applied are false and inflated. In fact, for the overwhelming majority of the products that JCPenney advertises with a discount or with a "free" offer, JCPenney has ***never***—not even for a single day—offered the product at the list price without a discount or "free" offer.

34. Plaintiff's counsel also investigated multiple JCPenney retail stores across multiple years in multiple different states, including dozens of store visits in Washington State. Plaintiff's counsel has compared the JCPenney retail store prices and discounts (including the list prices printed on the product tags, the percentage-off and "free" offer signage posted throughout the stores, and the resulting "discounted" prices for JCPenney products), to the JCPenney website prices and discounts for those products. Plaintiff's counsel found that



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

JCPenney's list prices, advertised percentage-off and "free"-offer discounts, and the resulting "discounted" prices for its products have been and continue to be substantially the same for its products both online and in-store. Plaintiff's counsel also found that JCPenney's prices and discounts have been and continue to be substantially the same across JCPenney retail stores in different states.

35. In fact, JCPenney effectively treats its online and in-store sales channels as the same. Customers can make purchases through the JCPenney website and pick the items up from any JCPenney retail store that same day. JCPenney also encourages its customers, in-store, to view JCPenney's website for additional colors or styles of the items that the customers are looking at in the retail store.

36. Plaintiff's counsel has also investigated and reviewed years of marketing emails sent by JCPenney to its customers. The percentage-off discounts and "free" offers which JCPenney advertised, and continues to advertise, in the subject lines of its marketing emails are consistent with the discounts and pricing on the JCPenney website and in JCPenney retail stores.

### B. CEMA Prohibits Sending Washington Residents Commercial Emails With False Or Misleading Subject Lines.

37. Washington's Commercial Electronic Mail Act (CEMA) regulates deceptive email marketing.

38. CEMA prohibits a person from initiating or conspiring to initiate the transmission to an email address that the sender knows, or has reason to know, is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b).

39. The Washington Supreme Court has recently confirmed that CEMA "prohibits sending Washington residents commercial e-mails that contain ***any*** false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025) (emphasis in original). This includes false or misleading information about promotions, sales, or other pricing information. **"CEMA protects consumers by requiring**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."** *Id.* (emphasis added).

40. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line); *see also Brown*, 567 P.3d at 45 ("CEMA sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails."). "The harms resulting from deceptive commercial emails resemble the type of harms remedied by nuisance or fraud actions." *Harbers*, 415 F. Supp. 3d at 1008.

41. An injury occurs any time a commercial email is transmitted that contains false or misleading information in the subject line. *Harbers*, 415 F. Supp. 3d at 1011.

42. Under CEMA, it is irrelevant whether the misleading commercial emails were solicited. *Id.*

43. "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Brown*, 567 P.3d at 42.

44. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **However, because a violation of CEMA is a per se violation of the CPA, all five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

45. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 567 P.3d at 42. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**CEMA.”** *Id.* at 45 (emphasis added); *see also Wright*, 189 Wn.2d at 729 (“[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.”) (emphasis in original).

46. A person is entitled to $500 statutory damages “anytime a prohibited message is transmitted.” *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) (“[CEMA] provides statutory damages of $500 for every email that violates it.”). “Unlike the CPA, CEMA’s $500 penalty does not require a showing of actual damages.” *Brown*, 567 P.3d at 42.

### C. JCPenney Has Transmitted Numerous Commercial Emails With False Or Misleading Subject Lines In Violation of CEMA.

47. JCPenney has transmitted numerous commercial emails with false or misleading subject lines to Ms. Arcand and other Washington residents in violation of CEMA. (As used in this Complaint, allegations that JCPenney “transmitted” or “sent” an email are allegations that JCPenney initiated the transmission of the email, conspired with another to initiate the transmission of the email and/or assisted the transmission of the email.)

48. These violative emails have subject lines advertising materially false percentage-off discounts or materially false “free” offers.

#### 1. JCPenney Transmits Emails With Subject Lines Advertising False Discounts.

49. JCPenney transmits commercial emails with subject lines advertising large percentage-off discounts (typically between 25-70% off). These email subject lines are materially false or misleading in violation of CEMA and the CPA because the advertised percentage-off discounts are phony and are calculated from inflated, and never-charged, list prices.

50. **For example, Plaintiff received each of the following violative percentage-off emails while residing in Washington State, on the date, and containing the email subject line, specified below**:



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

| **Date** | **Email Subject Line** |
|---|---|
| 06/10/2025 | Get ready to stun! 25% Off dresses & jumpsuits |
| 05/24/2025 | BOGO FREE swim 👏 Shorts from $14.99 👏 50% Off dress shirts 👏 |
| 05/11/2025 | DOORBUSTERS: 50% Off Clarks sandals + $14.99 St. John's Bay capris |
| 09/24/2024 | 40% Off Liz Claiborne in your Weekly Ad! |
| 09/21/2024 | 40% Off Liz Claiborne + Extra 25% Off! |
| 09/06/2024 | Fab for fall! 30% Off Liz Claiborne + FREE shipping over $49 |
| 09/04/2024 | Everyday faves: 30% Off St. John's Bay + FREE shipping over $49 |
| 08/21/2024 | Feel-good fall styles, up to 40% off St. John's Bay + FREE shipping over $49 |
| 08/20/2024 | Levi's® for less! 30% Off + FREE shipping over $49 |
| 08/11/2024 | Sneaker Sale! 25% Off adidas, PUMA & Skechers |
| 08/06/2024 | Shop now! 30% Off Liz Claiborne & St. John's Bay |
| 07/28/2024 | Lovin' that Liz comfort! Up to 30% Off Liz Claiborne |
| 07/23/2024 | Sneaker Sale! 25% Off adidas, PUMA & Skechers |
| 06/22/2024 | Go 4th in 🔴 ⚪ 🔵 30% Off St. John's Bay |
| 06/21/2024 | 30% Off St. John's Bay & Liz Claiborne + coupon savings |
| 06/16/2024 | Final hours ⭐ DoorBusters: 30% Off haircare, kids' PUMA & adidas |
| 06/15/2024 | Run for it! 🏃 25% Off adidas, Reebok, PUMA & more |
| 02/16/2024 | OMG: 40% Off Levi's® |
| 11/25/2023 | Winning Black Friday: Champion at 50% Off! 🏅 |
| 11/23/2023 | Black Friday Sale! 40% OFF Levi's® 👖 |
| 10/31/2023 | Oooh 👻 Liz Claiborne • Levi's® • St. John's Bay, all up to 55% Off |

51. The advertised percentage-off discounts in these email subject lines are viewed both under the law and by reasonable consumers to refer to discounts from JCPenney's own regular offering prices for its products. In reality, JCPenney calculated the "xx% Off" statements from fictitious list prices at which JCPenney never or almost never offered its products. Meanwhile, there was no qualifier or other indicator in the subject line to notify the



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

email recipients that JCPenney had assigned these words and symbols an invented or unusual subjective meaning rather than their ordinary or objective meaning.

### 2. JCPenney Transmits Emails With Subject Lines Advertising False "Free" Offers.

52. JCPenney also sends commercial emails with subject lines advertising "free" offers such as "Buy 1 Get 1 Free," "BOGO Free," "Buy 1 Get 2 Free," and "B1G2 Free." The "free" offers advertised in these email subject lines are materially false or misleading in violation of CEMA and the CPA because JCPenney inflates the first item's selling price (typically at least doubling it from the true regular price) to recover the cost of the "free" item, such that the "free" offer is phony.

53. **For example, Plaintiff received each of the following violative "free" offer emails while residing in Washington State, on the date, and containing the email subject line, specified below**:

| Date | Email Subject Line |
|---|---|
| 05/26/2025 | Last chance❗B1G2 FREE towels |
| 05/24/2025 | BOGO FREE swim 👏 Shorts from $14.99 👏 50% Off dress shirts 👏 |
| 05/23/2025 | Really BIG Deal❗Buy 1 Get 2 FREE towels |
| 04/25/2025 | Really BIG Deal❗Buy 1 Get 2 FREE Curtains |
| 09/15/2024 | Last chance❗Buy 1 Get 2 FREE towels |
| 09/13/2024 | REALLY BIG DEAL❗Buy 1 Get 2 FREE towels |
| 07/26/2024 | Buy 1 get TWO Free sandals! 🤯 |

54. The "free" offer statements in these email subject lines are false and misleading. Advertised "free" offers such as these are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that first item's regular price. However, whenever JCPenney makes such a purported "free" offer, JCPenney inflates the first item's selling price to its never otherwise charged list price. Because the item is "discounted" by up to 70% off the



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the consumer is not getting any deal at all.

55. The Federal Trade Commission warns sellers advertising "Free" offers that "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). "[W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, **the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other**. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased[.]" 16 C.F.R. § 251.1(b)(1) (emphasis added).

56. Accordingly, it is deceptive for a seller making a "Free" offer to "increase[] his regular price of the article required to be bought." 16 C.F.R § 233.4(b). "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a 'Free' or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30–day period." 16 C.F.R. § 251.1(b)(2).

57. The above violative emails are only a fraction of the total number of violative emails that JCPenney sent to Washington residents within the applicable limitations period.

58. Attached as **Exhibit B** to this Complaint is a non-exhaustive list of 72 violative emails that JCPenney sent within the applicable limitations period to Washington residents. All of these 72 emails contain subject lines which advertise false or misleading percentage-off discounts, false "free" offers, and/or false or misleading limited-time savings. JCPenney also transmitted many other similar violative emails within the applicable limitations period to Washington residents, including Plaintiff.

59. As of the date of the filing of this Complaint, Plaintiff is still receiving JCPenney's commercial emails. Plaintiff would like to continue to receive JCPenney's



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

commercial emails, provided that the subject lines of the emails do not contain false or misleading information.

**D. JCPenney Sent Commercial Emails To Consumers Whom It Knew, Or Had Reason To Know, Resided In Washington.**

60. JCPenney sent the false and misleading commercial emails to email addresses that JCPenney knew, or had reason to know, were held by Washington residents (i.e., Plaintiff and members of the Class), because JCPenney had a physical Washington address that was associated with the recipient and/or JCPenney had access to data regarding the recipient indicating that they were in Washington State. JCPenney knew or should have known that Plaintiff and the members of the Class were residents of Washington State.

61. JCPenney knows where the overwhelming majority of its customers reside through several methods.

62. First, for any person that places an order through the JCPenney website, JCPenney associates that email address with a shipping address and billing address for that order.

63. Second, JCPenney encourages online shoppers to create online accounts. Customers save their contact information in their JCPenney accounts, including their email address, shipping address, billing address, and phone number.

64. Third, JCPenney aggressively signs up its in-store customers for its Rewards program, which includes signing up customers for an online account if they do not already have one.

65. Discovery will show that, at the time JCPenney sent the commercial emails, JCPenney knew or had access to data showing that the email recipient was a Washington resident. Indeed, the vast majority of consumers who received commercial emails from JCPenney signed up to receive those emails either when they placed an order online or when



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

they created an online account. Thus, discovery will show that JCPenney has the physical address for virtually every consumer that it sends commercial emails to.[3]

**CLASS ALLEGATIONS**

66. Plaintiff brings this lawsuit on behalf of herself and the members of the following Washington State class (the "Class"):

> **All residents of the State of Washington who, within the applicable limitations period, received an email from or at the behest of JCPenney that contained in the subject line: (a) a "xx% Off" or similar percentage-off statement and/or (b) a statement advertising a "free" offer.**

67. Specifically excluded from the Class are JCPenney, any entity in which JCPenney has a controlling interest or which has a controlling interest in JCPenney, JCPenney's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

68. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in JCPenney's records and can be easily ascertained from those records.

---

[3] JCPenney also has other methods by which it could have determined whether the consumers to whom it sent the violative emails resided in Washington. Discovery will show that JCPenney employs methods to track the effectiveness of its marketing emails and to identify consumers who click on links contained in JCPenney's marketing emails, including by identifying their physical location. Discovery will also show that JCPenney utilizes online tracking technologies to identify and locate the consumers who click on links contained in JCPenney's marketing emails and that visit its website. JCPenney could have used the information obtained through these online tracking technologies to identify which consumers are in Washington.

Additionally, JCPenney knew, or had reason to know, that the email addresses were held by Washington residents because this information was available to JCPenney upon request from the registrant of the internet domain name contained in each recipient's email address. *See* RCW 19.190.020(2). JCPenney also knew or had reason to know that it sent emails to Washington residents due to its large presence in the state and the volume of marketing emails it sends to people around the country. *See State v. Heckel*, 122 Wash. App. 60, 69 (2004) (holding as a matter of law that a defendant had a reason to know that he sent emails to Washington residents by sending over 100,000 emails a week to people around the country).



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

69. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether JCPenney sent commercial emails with false or misleading information in the subject lines;

b. Whether JCPenney initiated the transmission or conspired to initiate the transmission of such commercial emails to recipients residing in Washington State;

c. Whether JCPenney should be ordered to pay statutory damages to Plaintiff and Class members; and

d. Whether JCPenney should be enjoined from further engaging in the misconduct alleged herein.

70. **Typicality.** Plaintiff's claims are typical of Class members' claims. JCPenney transmitted, conspired to transmit, or assisted to transmit emails with false or misleading information in the subject line to Plaintiff and to each Class member. Plaintiff and Class members all bring the same claims and face the same potential defenses.

71. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

72. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for JCPenney's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

73. By its conduct and omissions alleged herein, JCPenney has acted and refused to act on grounds that apply generally to the Class members, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

74. JCPenney is primarily engaged in the business of selling goods. Each cause of action asserted by Plaintiff against JCPenney in this Complaint arises out of and is limited to communications related to JCPenney's sale of goods.

## CAUSES OF ACTION

### COUNT I
### Violation of the Washington Consumer Protection Act
### RCW Chapter 19.86

75. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

76. Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

77. The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute. The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020.

78. The CPA recognizes and incorporates *per se* violations. "Per se CPA violations are predicated on the Legislature's recognition that certain conduct is categorically against the public interest." *Brown v. Old Navy, LLC*, 567 P.3d 38, 46 (Wash. 2025). The Washington Legislature routinely prohibits certain specified conduct but, instead of, or in addition to, creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

79. If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

80. A plaintiff can plead a violation of the CPA by pleading that the CPA was violated *per se* due to a violation of the Washington Commercial Electronic Mail Act ("CEMA"). *See Brown*, 567 P.3d at 42 ("A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)."); *see also* RCW 19.190.030(1)(b) ("It is a violation of the consumer protection act, chapter 19.86 RCW . . . to initiate the transmission of a commercial electronic mail message that . . . [c]ontains false or misleading information in the subject line.").

81. CEMA prohibits a person from initiating the transmission to an email address that the sender knows or has reason to know is held by a Washington State resident of a commercial email that contains false or misleading information in the email's subject line. RCW 19.190.020(1)(b). The Washington Supreme Court has held that this includes subject lines with ***any*** false or misleading information. *Brown*, 567 P.3d at 47 ("[CEMA] prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails.") (emphasis in original).[4]

82. "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. Nov. 27, 2019)

---

[4] CEMA also prohibits a person from initiating the transmission from a computer located in Washington State of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.020(1)(b). Plaintiff is not alleging a CEMA violation under this prong because, as of the filing of this lawsuit, she does not possess information that the offending emails were transmitted from a computer located in Washington State. Plaintiff reserves the right to seek to amend this pleading in the event that she obtains information, through discovery or otherwise, which indicates that the offending emails were transmitted from a computer located in Washington State.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

(holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from defendant containing allegedly false "xx% off" statements in the subject line); *see also Brown*, 567 P.3d at 45 ("CEMA sought to give consumers relief from commercial spam e-mail by requiring accuracy and truthfulness in the subject lines of such e-mails.").

83. Under CEMA, it is irrelevant whether the commercial emails were solicited. *Harbers*, 415 F. Supp. 3d at 1011.

84. Generally, a plaintiff pleading a claim under the CPA must plead five necessary elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). **Because Plaintiff alleges a *per se* CPA violation by alleging a CEMA violation, all of these five elements are satisfied as a matter of law.** *Id.* at 724; *see also Brown*, 567 P.3d at 42.

85. "Under CEMA, the injury is receiving an e-mail that violates its regulations." *Brown*, 2025 WL 1132243, at *2. Accordingly, **"CEMA does not require a showing of injury for statutory damages to be awarded because the injury is receiving the e-mail that violates CEMA."** *Id.* at 45 (emphasis added); *see also Wright*, 189 Wn.2d at 729 ("[CEMA] does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*.") (emphasis in original).

86. A plaintiff who successfully pleads and proves a CEMA violation as a *per se* violation of the CPA may recover the remedies which the plaintiff chooses to seek that are available under the CPA (e.g., injunctive relief, treble damages, attorneys' fees and costs (RCW 19.86.090)) and/or the remedies available under CEMA (e.g., statutory damages of $500 per email sent in violation of CEMA and injunctive relief (RCW 19.190.040, RCW 19.190.090)).

87. **"Unlike the CPA, CEMA's $500 penalty does not require a showing of actual damages."** *Brown*, 567 P.3d at 42 (emphasis added). A person is entitled to $500 statutory damages "anytime a prohibited message is transmitted." *Harbers*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2011 WL 744664, at *7



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

(W.D. Wash. Feb. 23, 2011) ("[CEMA] provides statutory damages of $500 for every email that violates it.").

88. JCPenney is a "person" within the meaning of CEMA. RCW 19.190.010(11).

89. JCPenney has initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of numerous commercial emails with subject lines containing false or misleading information to Plaintiff and the Class. RCW 19.190.030(1)(b).

90. The subject lines of JCPenney's emails contained materially false or misleading information.

91. The false or misleading information in the subject lines of JCPenney's emails was intended to, or had the capacity to, deceive a substantial portion of the public.

92. The emails were electronic mail messages, in that they were emails sent to an email address; the emails also referred to an internet domain, whether or not displayed, to which an email can or could be sent or delivered. RCW 19.190.010(5).

93. The emails were "commercial electronic mail messages," in that they were sent for the purpose of promoting goods or services for sale or lease. RCW 19.190.010(2).

94. JCPenney was the original sender of the emails.

95. Plaintiff and the Class members each received the emails at their electronic mail addresses, which are the destinations, commonly expressed as a string of characters, at which they receive and to which electronic mail may be sent or delivered. RCW 19.190.010(4).

96. JCPenney initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of the emails to one or more email addresses that JCPenney knew, or had reason to know, was held by a Washington State resident, i.e., Plaintiff and members of the Class.

97. At all relevant times, JCPenney knew, or had reason to know, that the intended recipients (Plaintiff and members of the Class) were residents of the State of Washington because, without limitation: (1) JCPenney possessed actual knowledge of Plaintiff's and each Class member's state of residence; (2) JCPenney possessed constructive knowledge of



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiff's and each Class member's state of residence; (3) information was available to JCPenney upon request from the registrant of the internet domain name contained in each recipient's email address; and/or (4) JCPenney otherwise knew or should have known or had reason to know that Plaintiff and the members of the Class were residents of the State of Washington.

98. For example, without limitation, JCPenney knew or had reason to know that it sent emails to Washington residents because the vast majority of consumers who received its commercial emails had provided JCPenney with their shipping address and billing address when they placed an order online and/or when they created an online account.

99. JCPenney engaged in a pattern and practice of violating CEMA. As a result of JCPenney's acts and omissions, Plaintiff and Class members are entitled to $500 in statutory damages for each and every email that violated CEMA that was transmitted to them. Plaintiff and Class members are also entitled to recover actual damages, treble damages, and attorneys' fees and costs, pursuant to RCW 19.86.090.

100. Treble damages are appropriate under these circumstances because, without limitation, JCPenney's misconduct has been "an ongoing course of conduct affecting thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

101. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CPA to protect the general public from JCPenney's misconduct.

102. The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful conduct is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. **Private citizens act as private attorneys general** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. **Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests**."



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

*Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

103. This type of injunctive relief has been referred to as "public injunctive relief." *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.") (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999)). The *Broughton* court likewise referred to consumers seeking public injunctive relief as "private attorneys general." *See Broughton*, 21 Cal. 4th at 1077.

104. JCPenney's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by JCPenney absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful conduct alleged herein.

105. The balance of the equities favors the entry of permanent public injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing misconduct absent the entry of permanent public injunctive relief against JCPenney.

106. Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful conduct alleged herein. Plaintiff continues to receive commercial emails from JCPenney, and she wants to continue receiving commercial emails from JCPenney in the future, provided that the subject lines of the emails do not contain false or misleading information. Plaintiff will be harmed if, in the future, she receives commercial emails from JCPenney that have false or misleading information in their subject lines.

107. Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

thus cannot be awarded. For example, it is impossible to know how many violative emails JCPenney will send Plaintiff in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful conduct, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

**COUNT II**
**Violation of the Washington Commercial Electronic Mail Act**
**RCW Chapter 19.190**

108. Plaintiff realleges and incorporates by reference all paragraphs alleged hereinabove.

109. Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general, and as a proposed class representative serving on behalf of all others similarly situated.

110. The Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, creates an independent private of right of action which can be asserted by, among others, a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). It is Plaintiff's intent in this count to plead an independent CEMA cause of action only to the extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

111. JCPenney has violated CEMA on the grounds alleged in Count I above.

112. For the reasons alleged in Count I, Plaintiff seeks, and may obtain, a permanent public injunction against JCPenney.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## PRAYER FOR RELIEF

A. Plaintiff Julie Arcand, on behalf of herself individually, as a private attorney general, and/or on behalf of the proposed Class, requests that the Court order relief and enter judgment against JCPenney as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2. Permanently enjoin JCPenney from engaging in the unlawful conduct alleged herein, pursuant to, without limitation, RCW 19.86.090; RCW 19.190.090(1);

3. Order JCPenney to pay Plaintiff and each member of the Class statutory damages of $500 for each and every commercial email that JCPenney transmitted to them that contained false or misleading information in the subject line in violation of CEMA pursuant to, without limitation, RCW 19.190.020(1)(b), RCW 19.190.030(1)(b), RCW 19.190.040(1);

4. Order JCPenney to pay treble damages pursuant to RCW 19.86.090;

5. Order JCPenney to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6. Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted on August 4, 2025, by:

HATTIS LUKACS & CORRINGTON

By: ____________________
Daniel M. Hattis

By: ____________________
Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650

Fax: 425.412.7171

*Attorneys for Plaintiff
and the Proposed Class*

# EXHIBIT A

JCPenney Newsroom

# SPARC Group Has Merged with JCPenney To Form Catalyst Brands

**Six iconic American brands come together under a unified powerhouse portfolio to better serve customers through combined scale, distribution, design and sourcing**

Catalyst Brands

**PLANO, Texas (Jan. 8, 2025)** — JCPenney and SPARC Group today announced that they have combined to form a new organization, Catalyst Brands, creating an unmatched portfolio of six iconic retail banners that celebrate the essence of American style.

Catalyst Brands brings together SPARC Group's brands Aéropostale, Brooks Brothers, Eddie Bauer, Lucky Brand and Nautica with JCPenney and its exclusive private brands, including Stafford, Arizona and Liz Claiborne. Catalyst Brands, which has served over 60 million customers over the past three years, has broad consumer reach through a robust distribution network of owned stores, e-commerce sites and wholesale partners.

**Catalyst Brands Business Details and Ownership**

Catalyst Brands launches with more than $9 billion of revenue, 1,800 store locations, 60,000 employees and $1 billion of liquidity and is poised to generate significant strategic and operational value. The combined Catalyst Brands organization is a joint venture formed in an all-equity transaction between JCPenney and SPARC Group, with shareholders Simon Property Group, Brookfield Corporation, Authentic Brands Group and Shein.

In addition, Catalyst Brands has sold the U.S. operations of Reebok and is exploring strategic options for the operations of Forever 21.

**Leadership and Organizational Structure**

Marc Rosen, formerly the chief executive officer of JCPenney, has become CEO of Catalyst Brands. There are three brand CEOs who will oversee the portfolio that report to Rosen. Michelle Wlazlo, formerly the chief merchandising and supply chain officer of JCPenney, has been promoted

to Brand CEO of JCPenney. Natalie Levy continues her role as Brand CEO of Aéropostale, Lucky Brand and Nautica and Ken Ohashi will continue leading Brooks Brothers and has assumed responsibility of Eddie Bauer in his new role as Brand CEO of both brands. Kevin Harper, formerly an executive with Walmart, will join Catalyst Brands as chief operating officer. Marisa Thalberg, formerly the consulting chief marketing and brand officer of JCPenney, has become the chief customer and marketing officer of Catalyst Brands. Additional leadership appointments can be found here.

Catalyst Brands Proposition

"Catalyst Brands brings together the rich heritage of six unique brands with modern energy and a new vision for success. The word 'catalyst' reflects our drive to accelerate innovation and energy and amplify the impact of this powerhouse portfolio. Together, we bring scale, expertise and broad appeal to customers across America," Rosen said. "For us, customers are at the heart of what we do. We have a shared belief that customers deserve fashion and style of great quality for any and every moment in life. We will leverage our resources and best-in-class industry talent to grow our brands further."

With offerings that include business and formal fashion from Brooks Brothers, casual apparel for teenagers and young adults from Aéropostale, outdoor recreation clothing and gear from Eddie Bauer to everyday style for every family from JCPenney, and more, Catalyst Brands has expansive reach across market and customer segments. Catalyst Brands will integrate complementary strengths, including strong product design and sourcing capabilities, deep supplier relationships and a growing use of data-driven and AI technology to enhance its supply chain and inventory management capabilities and to deepen consumer relationships.

"Our relationships with more than 60 million customers and the deep data we have create a compelling consumer value proposition across our brands. We can design a more personalized shopping experience, offer unified loyalty and credit card programs, and ultimately, cross-sell more effectively. That's one example of the many benefits we'll see in this combination," continued Rosen. "With a clean balance sheet, we're in great position to move forward."

Catalyst Brands is headquartered at the current corporate location of JCPenney in Plano, Texas with offices in New York, Los Angeles and Seattle.

ABOUT JCPENNEY

JCPenney is the shopping destination for America's diverse, working families. With inclusivity at its core, the Company's product assortment meets customers' everyday needs and helps them commemorate every special occasion with style, quality and value. JCPenney offers a broad portfolio of fashion, apparel, home, beauty and jewelry from national and private brands and provides personal services including salon, portrait and optical. The Company and its 50,000 associates worldwide serve customers where, when and how they want to shop – from jcp.com to more than 650 stores in the U.S. and Puerto Rico.

In 2022, JCPenney celebrated 120 years as an iconic American brand by continuing its legacy of connecting with customers through shopping and community engagement. Please visit JCPenney's Newsroom to learn more and follow JCPenney on Facebook, Instagram, and Twitter.

ABOUT SPARC GROUP

SPARC Group is a full-service retail enterprise that drives product and commerce innovation through its multi-brand platform. As a dedicated operating partner for several prominent brands, SPARC delivers quality fashion and lifestyle products with a focus on outstanding customer service. The company operates retail stores, shop-in-shops, and eCommerce platforms in the U.S. while supporting leading wholesale accounts across North America, South America, Europe, and Asia Pacific. The Catalyst Brands transaction does not affect the intellectual property owned by Authentic Brands Group which SPARC Group licenses (Aéropostale, Brooks Brothers, Eddie Bauer, Forever 21, Lucky Brand, and Nautica).

**Media Contact:**
JCPenney
jcpnews@jcp.com

Search...

## Latest News




**Dear Diary… I Just Dropped My Dream Collab at JCPenney and the Vibe es Pura Energia!** ⚡ 💖
July 10, 2025




**The Most Impressive Wedding of the Year is Happening this Week in Venice. And it's all hosted by JCPenney (Yes, JCPenney).**
June 27, 2025




**America's Best Department Store Again? Yes, JCPenney!**
June 11, 2025

## Download Logo

Catalyst Brands

JCPenney Newsroom




**About**

Corporate Information

Corporate Responsibility

Leadership

**News**

Blog

Brands

Company

Financial

Leadership

Marketing

Philanthropy

Real Estate

Seasonal

**Images**

Gallery

**Videos**

Video Playlist

Terms & Conditions Legal © 2025 Penney IP LLC

# EXHIBIT B

# EXHIBIT A

## Violative Emails

| | Date | Email Subject Line |
|---|---|---|
| 1. | 06/15/2025 | Yes! 30% Off Levi's® |
| 2. | 06/10/2025 | Get ready to stun! 25% Off dresses & jumpsuits |
| 3. | 06/09/2025 | Oh, retro! 25% Off sneakers for the family |
| 4. | 05/26/2025 | Last chance ❗ B1G2 FREE towels |
| 5. | 05/25/2025 | Stop & stare✨75% Off GOLD jewelry |
| 6. | 05/24/2025 | BOGO FREE swim 👏 Shorts from $14.99 👏 50% Off dress shirts 👏 |
| 7. | 05/23/2025 | Really BIG Deal ❗ Buy 1 Get 2 FREE towels |
| 8. | 05/11/2025 | DOORBUSTERS: 50% Off Clarks sandals + $14.99 St. John's Bay capris |
| 9. | 04/27/2025 | 25% Off PUMA & adidas |
| 10. | 04/25/2025 | Really BIG Deal ❗ Buy 1 Get 2 FREE Curtains |
| 11. | 03/27/2025 | Up to 40% Off Liz Claiborne styles |
| 12. | 03/26/2025 | 25% Off adidas & Champion! Wear these on repeat |
| 13. | 03/18/2025 | all hands on deck: 40% Off matching family swim |
| 14. | 03/18/2025 | Up to 40% OFF Liz Claiborne spring looks! |
| 15. | 02/22/2025 | Final days to shop! The Liz Event, up to 40% Off |
| 16. | 02/16/2025 | Weekly Ad! Up to 40% Off Liz Claiborne 🛍️ |
| 17. | 12/29/2024 | Last chance ❗ Buy 1 Get 2 FREE Sheets & Pillowcases |
| 18. | 12/27/2024 | REALLY BIG DEAL ❗ Buy 1 Get 2 FREE Sheets & Pillowcases |
| 19. | 12/22/2024 | Last chance ❗ Buy 1 Get 2 FREE Boots & Bags |
| 20. | 12/20/2024 | REALLY BIG DEAL ❗ Buy 1 Get 2 FREE Boots & Bags |
| 21. | 12/10/2024 | 30% Off Levi's® + cozy sweaters |
| 22. | 12/04/2024 | Up to 40% Off Liz Claiborne! The Liz Event starts now! |
| 23. | 12/01/2024 | Last chance ❗ Buy 1 Get 2 FREE Holiday Ornaments |
| 24. | 11/30/2024 | REALLY BIG DEAL ❗ Buy 1 Get 2 FREE Holiday Ornaments |

# EXHIBIT A

## Violative Emails

| | Date | Email Subject Line |
|---|---|---|
| 25. | 11/24/2024 | Black Friday deals for all! Up to 60% Off Liz Claiborne |
| 26. | 11/14/2024 | Closet classics • Up to 30% Off Liz Claiborne |
| 27. | 11/03/2024 | Buy 1 Get 1 FREE dresses! |
| 28. | 10/27/2024 | Last chance ❗ Buy 1 Get 2 FREE all pillows |
| 29. | 10/25/2024 | REALLY BIG DEAL ❗ Buy 1 Get 2 FREE all pillows |
| 30. | 10/12/2024 | Don't flinch, it's only the Grinch! 25% Off PJs |
| 31. | 10/02/2024 | 50% Off kids' Champion 🙌 All your gear, here! |
| 32. | 09/24/2024 | 40% Off Liz Claiborne in your Weekly Ad! |
| 33. | 09/21/2024 | 40% Off Liz Claiborne + Extra 25% Off! |
| 34. | 09/15/2024 | Last chance ❗ Buy 1 Get 2 FREE towels |
| 35. | 09/13/2024 | REALLY BIG DEAL ❗ Buy 1 Get 2 FREE towels |
| 36. | 09/08/2024 | Must shop! Up to 40% Off St. John's Bay |
| 37. | 09/06/2024 | Fab for fall! 30% Off Liz Claiborne + FREE shipping over $49 |
| 38. | 09/04/2024 | Everyday faves: 30% Off St. John's Bay + FREE shipping over $49 |
| 39. | 08/21/2024 | Feel-good fall styles, up to 40% off St. John's Bay + FREE shipping over $49 |
| 40. | 08/20/2024 | Levi's® for less! 30% Off + FREE shipping over $49 |
| 41. | 08/11/2024 | Sneaker Sale! 25% Off adidas, PUMA & Skechers |
| 42. | 08/08/2024 | 30% Off a.n.a 👗 Dress refresh |
| 43. | 08/06/2024 | Shop now! 30% Off Liz Claiborne & St. John's Bay |
| 44. | 07/31/2024 | LEVI'S® SALE...let's go! 👖 30% Off men's & women's |
| 45. | 07/28/2024 | Lovin' that Liz comfort! Up to 30% Off Liz Claiborne |
| 46. | 07/26/2024 | Buy 1 get TWO Free sandals! 🤯 |
| 47. | 07/24/2024 | Stock up on Levi's®! 30% OFF |
| 48. | 07/23/2024 | Sneaker Sale! 25% Off adidas, PUMA & Skechers |

# EXHIBIT A

## Violative Emails

| | Date | Email Subject Line |
|---|---|---|
| 49. | 06/22/2024 | Go 4th in 🔴⚪🔵 30% Off St. John's Bay |
| 50. | 06/21/2024 | 30% Off St. John's Bay & Liz Claiborne + coupon savings |
| 51. | 06/20/2024 | We've got the hots for summer: up to 30% Off Arizona & St. John's Bay |
| 52. | 06/16/2024 | Final hours ⭐ DoorBusters: 30% Off haircare, kids' PUMA & adidas |
| 53. | 06/15/2024 | Run for it! 🏃 25% Off adidas, Reebok, PUMA & more |
| 54. | 05/15/2024 | All hands on deck: 40% Off matching family swim |
| 55. | 04/26/2024 | The Liz Event: Up to 40% Off + Extra 20% Off |
| 56. | 02/16/2024 | OMG: 40% Off Levi's® |
| 57. | 12/16/2023 | GIFT ALERT: You can't miss 50% off Levi's® 👖 |
| 58. | 12/02/2023 | Levi's® fit even better at 30% Off 😉 |
| 59. | 11/25/2023 | Winning Black Friday: Champion at 50% Off! 🏅 |
| 60. | 11/23/2023 | Black Friday Sale! 40% OFF Levi's® 👖 |
| 61. | 11/16/2023 | Open for 30% off Levi's® |
| 62. | 10/31/2023 | Oooh 👻 Liz Claiborne • Levi's® • St. John's Bay, all up to 55% Off |
| 63. | 08/04/2023 | Step on it! B1G2 FREE sandals |
| 64. | 07/31/2023 | Buy 1 Get 2 FREE Sandals for the fam! |
| 65. | 07/19/2023 | *BOGO Free!* Arizona jeans & pants |
| 66. | 04/27/2023 | Weekly Ad: 40% Off Liz & more! |
| 67. | 04/19/2023 | Beach happy! 30% Off Swim |
| 68. | 03/31/2023 | 25% Off athletic shoes for the fam |
| 69. | 11/10/2022 | 40% Off Champion + $5.99 Xersion graphic tees |
| 70. | 10/26/2022 | BOO-ts! Buy 1 Get 2 FREE 🥾👢 |
| 71. | 10/07/2022 | Just marked down! Buy 1, Get 1 FREE! |
| 72. | 07/19/2021 | BUY 1 GET 2 FREE Sandals for the fam |